FILED
2015 Mar-30  AM 11:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. CV-15-S-6-NE |
| vs. | ) |
| | ) |
| $134,972.34 SEIZED FROM FNB BANK, ACCOUNT NUMBER-5351, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the United States of America, asserts a civil action *in rem* for the forfeiture of $134,972.34 in United States currency ("the defendant currency") seized on August 20, 2014, from FNB Bank, account number -5351, pursuant to 31 U.S.C. § 5317(c)(2).[1]  The United States alleges that the defendant currency was involved in, or traceable to, acts of illegally structuring currency transactions in violation of 31 U.S.C. § 5324.[2]  The case presently is before the court on the motion to dismiss and

---

[1] Doc. no. 1 (Complaint), ¶ 1.

[2] *Id.* ¶ 5.  "Structuring" in the jargon of the banking industry is the practice of executing financial transactions, such as bank deposits or withdrawals, in a pattern calculated to avoid the creation of records and reports required by law, such as the statutes adopted by Congress in 1970 that require financial institutions to report cash transaction exceeding $10,000 to the government.  Pub. L. No. 91-508, §§ 221-23, 84 Stat. 1122 (1970) (codified as amended at 31 U.S.C. § 5313(a); 31 C.F.R. § 102.1(b) (1970)).  "Structuring" includes the act of parceling what would otherwise be a transaction exceeding $10,000 into a series of smaller transactions to avoid such reporting requirements, and to avoid scrutiny by regulators or law enforcement officers.  Congress made it a crime in 1987 to

for return of the defendant currency or, in the alternative, motion for a more definite statement, filed by CWE Enterprises, Inc., and Carlton Wayne Edwards (collectively, "the claimants") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.[3] Upon consideration, the motion will be denied for the reasons set out below.

## I. LEGAL STANDARDS

Civil asset forfeiture cases are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* 18 U.S.C. § 983(a)(4)(A) ("In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, . . ."). The Supplemental Rules apply to, among other proceedings, "forfeiture actions *in rem* arising from a federal statute." Fed. R. Civ. P. Supp. R. A(1)(B). Further, "[a] claimant who establishes standing to contest forfeiture may move to dismiss the action under [Federal Rule of Civil Procedure] 12(b)." Fed. R.

---

"structure" financial transactions for the purpose of evading such reporting requirements. *See generally* Sarah N. Welling, *Smurfs, Money Laundering, and the Federal Criminal Law: The Crime of Structuring Transactions*, 41 Fla. L. Rev. 287 (1989).

[3] *See* doc. no. 9 (Motion to Dismiss). *See also* doc. no. 11 (Response in Opposition to Motion to Dismiss).

Civ. P. Supp. R. G(8)(b)(*i*) (bracketed alteration supplied).

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[4]  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.*

---

[4] In full text, Rule 12(b) provides that:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> > (1) lack of subject-matter jurisdiction;
> >
> > (2) lack of personal jurisdiction;
> >
> > (3) improper venue;
> >
> > (4) insufficient process;
> >
> > (5) insufficient service of process;
> >
> > (6) failure to state a claim upon which relief can be granted; and
> >
> > (7) failure to join a party under Rule 19.
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

*v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives

4

a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations.  *When there are well-pleaded factual allegations*, *a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief*.

*Iqbal*, 556 U.S. at 678-79 (emphasis added).

Due to the nature of this case, however, the traditional pleading rules are modified by Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which set out specific pleading requirements for forfeiture actions *in rem*.  Courts are instructed to evaluate the sufficiency of a complaint seeking a forfeiture of assets by determining, among other things, whether the complaint meets that requirement of Supplemental Rule G(2) specifying that the pleading should "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Fed. R. Civ. P. Supp. R.

G(2)(f).[5]  The government's burden of persuasion was modified by the Civil Asset

Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202

(codified primarily at 18 U.S.C. § 983), providing that "the burden of proof is on the

Government to establish, by a preponderance of the evidence, that the property is

subject to forfeiture."  18 U.S.C. § 983(c)(1).

   In light of the requirements of Supplemental Rule G and CAFRA, it is unclear

to what extent, if any, the *Twombly*/*Iqbal* "plausible claim for relief" standard applies

to civil forfeiture complaints commenced by the government.  Judge Kyle of the

---

[5] In full text, Supplemental Rule G(2) provides that:

   The complaint must:

      (a) be verified;

      (b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over
      the defendant property, and venue;

      (c) describe the property with reasonable particularity;

      (d) if the property is tangible, states its location when any seizure occurred
      and — if different — its location when the action is filed;

      (e) identify the statute under which the forfeiture action is brought; and

      (f) state sufficiently detailed facts to support a reasonable belief that the
      government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. R. G(2).  Claimants only contest whether the complaint states a claim upon
which relief can be granted, *i.e.*, whether the complaint states sufficiently detailed facts to support
a claim for relief, and does not contest whether the other requirements of Supplemental Rule G(2)
are satisfied.  *See* doc. no. 9 (Motion to Dismiss), at 8-12.

District Court of Minnesota illuminated this issue in *United States v. Real Property and Premises*, 657 F. Supp. 2d 1060 (D. Minn. 2009), where he observed that:

> In the context of civil forfeiture proceedings, . . . it is unclear whether, or to what extent, *Twombly* applies. Although Supplemental Rule G(8)(b)(i) expressly references Federal Rule of Civil Procedure 12(b), which was discussed in *Twombly*[,] Supplemental Rule G(8)(b)(ii) states that "[t]he sufficiency of the complaint is governed by Rule G(2)." Supplemental Rule G(2), in turn, lists several items a forfeiture complaint must contain, including *inter alia* a description of the property to be forfeited, the location of the property, and "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supplemental Rule G(2)(a)-(f). There are no similar requirements in Federal Rule of Civil Procedure 8, which sets forth the pleading standard for civil actions to which the Supplemental Rules do not apply. Hence, because the Supplemental Rules provide the standards against which a forfeiture complaint must be measured, it is questionable whether *Twombly* has any application here.

*Real Property and Premises*, 657 F. Supp. 2d at 1065-66 (alterations in original, ellipses added).

The Supplemental Rules make clear that they "apply to . . . forfeiture actions *in rem*," and that the "Federal Rules of Civil Procedure also apply to the foregoing proceedings *except to the extent that they are inconsistent with these Supplemental Rules*." Fed. R. Civ. P. Supp. R. A. (emphasis supplied). In *Twombly* and *Iqbal*, the issue before the Supreme Court was the standard to be applied in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, *where Rule 8 governed the*

*sufficiency of a pleading*.  *See Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555-58; *see also American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (observing that "*Iqbal* explicitly held that the *Twombly* plausibility standard applies to all civil actions, not merely antitrust actions, *because it is an interpretation of Rule 8*") (citing *Iqbal*, 556 U.S. at 684 (emphasis supplied)).

Thus, because Supplemental Rule G(2) governs the pleading standard for civil asset forfeiture cases, rather than Federal Rule of Civil Procedure 8, the standard enunciated and clarified in *Twombly* and *Iqbal* does not govern the sufficiency of such complaints.[6]  Instead, the heightened pleading standard of Supplemental Rule G(2)(f) applies:  that is, "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."[7]

Even so, to the extent that the *Twombly* and *Iqbal* holdings do not conflict with Supplemental Rule G(2), they may provide guidance in deciding a motion to dismiss a civil asset forfeiture complaint.  *See $22,173.00 in United States Currency*, 716 F.

---

[6] *See*, *e.g.*, *United States v. 4323 Bellwood Circle, Atlanta, Georgia 30349*, 680 F. Supp. 2d 1370, 1372 (N.D. Ga. 2010) (finding that "the traditional pleading rules are modified by the Supplemental Rules," and applying Supplemental Rule G(2) to determine the sufficiency of the forfeiture complaint); *United States v. $22,173.00 in United States Currency*, 716 F. Supp. 2d 245, 249 (S.D. N.Y. 2010) (finding that Supplemental Rule G(2), rather than Fed. R. of Civ. P. 8 and the *Twombly* and *Iqbal* decisions, governs the sufficiency of a civil forfeiture complaint); *United States v. All Assets Held at Bank Julius Baer & Company, Ltd.*, 571 F. Supp. 2d 1, 16 (D. D.C. 2008) (finding that Supplemental Rule G creates a heightened pleading requirement for civil forfeiture complaints as compared to the Fed. R. Civ. P. 8 standard applicable in other cases).

[7] *See supra* note 5.

Supp. 2d at 249 ("[T]o the extent the[ *Twombly* and *Iqbal*] decisions and their progeny do not conflict with the Supplemental Rules, they may help to clarify when a civil forfeiture complaint survives the motion to dismiss phase."). Specifically, the requirement that a court ruling on a Rule 12(b)(6) motion to dismiss must disregard conclusory allegations in determining the sufficiency of a complaint does not conflict with Supplemental Rule G(2).

In summary, therefore, when a claimant moves to dismiss a civil asset forfeiture complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the court should determine the sufficiency of the complaint by first separating the factual and conclusory allegations, and then applying the standard of Supplemental Rule G(2)(f): *i.e.*, does the complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial"?

Additionally, when ruling upon any motion to dismiss, the court must assume that the facts set forth in a well-pleaded complaint are true. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (1994) (stating that, on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable

9

inferences drawn favorably to Plaintiffs) in the complaint as true").

Accordingly, that which is set out in the following portions of this memorandum opinion as a summary of "the facts" for the purpose of ruling upon claimants' Rule 12(b)(6) motion are those factual allegations from the complaint that have been separated from conclusory allegations, and may, or may not, be the actual facts. *See, e.g.*, *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

## II. SUMMARY OF THE FACTS AS ALLEGED

On August 1, 1987, an account numbered -5351 was opened at FNB Bank in the name of C.W.E. Enterprises, Inc., with Carlton Edwards, among others, listed as a signatory ("the bank account").[8]  Due to Edwards's banking practice of engaging in large, frequent withdrawals, he was placed on a currency transaction report ("CTR") exemption list on January 7, 2000, which lifted FNB Bank's requirement to file CTR's each time Edwards deposited, withdrew, or exchanged more than $10,000 in currency from the bank.[9]  Thereafter, the frequency of his withdrawals slowed and the amount of cash withdrawn decreased.[10]  As a result, FNB Bank took Edwards off the CTR exemption list on March 5, 2007, and reinstated the requirement that the bank file

---

[8] Doc. no. 1 (Complaint), ¶ 15.  The complaint also alleges that Carlton Edwards's wife (E. Faye Edwards), daughter (Sherry Edwards Brown), and employee (Stacey Blevins) were listed as signatories for the bank account.  *Id.*  The complaint does not allege who opened the bank account.

[9] *Id.* ¶ 18.

[10] *Id.* ¶ 19.

CTRs any time Edwards deposited, withdrew, or exchanged more than $10,000 in currency from the bank.[11]  Shortly thereafter, Edwards asked bank personnel why he had to fill out a CTR when conducting large cash transactions.  After that conversation, Edwards began withdrawing money in increments less than $10,000 in amount.[12]

Between October 1, 2013, and May 23, 2014, Carlton Edwards made the following cash withdrawals from the bank account:[13]

| Date | Day | Time | Amount |
|------|-----|------|--------|
| 10/1/2013 | Tuesday | 1:24:00 PM | $9,000.00 |
| 10/2/2013 | Wednesday | 1:48:00 PM | $9,000.00 |
| 10/4/2013 | Friday | 1:11:00 PM | $9,000.00 |
| 10/9/2013 | Wednesday | 1:57:00 PM | $9,000.00 |
| 10/11/2013 | Friday | 1:10:00 PM | $9,000.00 |
| 10/15/2013 | Tuesday | 1:30:00 PM | $9,000.00 |
| 10/16/2013 | Wednesday | 3:09:00 PM | $9,000.00 |
| 10/17/2013 | Thursday | 1:22:00 PM | $9,000.00 |
| 10/21/2013 | Monday | 1:51:00 PM | $9,000.00 |
| 10/23/2013 | Wednesday | 2:38:00 PM | $9,000.00 |
| 10/24/2013 | Thursday | 1:24:00 PM | $9,000.00 |
| 10/31/2013 | Thursday | 1:00:00 PM | $9,000.00 |
| 11/1/2013 | Friday | 3:03:00 PM | $9,000.00 |
| 11/4/2013 | Monday | 1:25:00 PM | $9,000.00 |
| 11/8/2013 | Friday | 1:26:00 PM | $9,000.00 |
| 11/12/2013 | Tuesday | 1:07:00 PM | $9,000.00 |

---

[11] *Id.*

[12] *Id.* ¶ 20.

[13] *Id.* ¶ 16.

| Date | Day | Time | Amount |
|------|-----|------|--------|
| 11/13/2013 | Wednesday | 1:25:00 PM | $9,000.00 |
| 11/15/2013 | Friday | 2:13:00 PM | $9,000.00 |
| 11/18/2013 | Monday | 1:59:00 PM | $9,000.00 |
| 11/20/2013 | Wednesday | 1:49:00 PM | $9,000.00 |
| 11/25/2013 | Monday | 1:05:00 PM | $9,000.00 |
| 11/26/2013 | Tuesday | 1:36:00 PM | $8,000.00 |
| 11/29/2013 | Friday | 3:11:00 PM | $9,000.00 |
| 12/2/2013 | Monday | 1:03:00 PM | $9,000.00 |
| 12/5/2013 | Thursday | 1:41:00 PM | $9,000.00 |
| 12/6/2013 | Friday | 12:34:00 PM | $9,000.00 |
| 12/9/2013 | Monday | 1:19:00 PM | $9,000.00 |
| 12/11/2013 | Wednesday | 1:57:00 PM | $9,000.00 |
| 12/12/2013 | Thursday | 1:07:00 PM | $9,000.00 |
| 12/16/2013 | Monday | 12:35:00 PM | $9,000.00 |
| 12/17/2013 | Tuesday | 12:06:00 PM | $9,000.00 |
| 12/20/2013 | Friday | 1:49:00 PM | $9,000.00 |
| 12/23/2013 | Monday | 12:41:00 PM | $9,000.00 |
| 12/26/2013 | Thursday | 1:47:00 PM | $9,000.00 |
| 12/27/2013 | Friday | 2:57:00 PM | $9,000.00 |
| 12/30/2013 | Monday | 1:58:00 PM | $9,000.00 |
| 1/2/2014 | Thursday | 2:50:00 PM | $8,000.00 |
| 1/6/2014 | Monday | 1:18:00 PM | $9,000.00 |
| 1/13/2014 | Monday | 1:48:00 PM | $9,000.00 |
| 1/15/2014 | Wednesday | 1:30:00 PM | $9,000.00 |
| 1/21/2014 | Tuesday | 2:24:00 PM | $9,000.00 |
| 1/23/2014 | Thursday | 1:52:00 PM | $9,000.00 |
| 1/24/2014 | Friday | 1:48:00 PM | $3,000.00 |
| 1/27/2014 | Monday | 1:06:00 PM | $9,000.00 |
| 1/30/2014 | Thursday | 1:51:00 PM | $9,000.00 |
| 1/31/2014 | Friday | 1:00:00 PM | $9,000.00 |
| 2/5/2014 | Wednesday | 2:03:00 PM | $9,000.00 |
| 2/10/2014 | Monday | 1:42:00 PM | $9,000.00 |
| 2/13/2014 | Thursday | 2:02:00 PM | $9,000.00 |

| Date | Day | Time | Amount |
|------|-----|------|--------|
| 2/21/2014 | Friday | 2:06:00 PM | $9,000.00 |
| 2/26/2014 | Wednesday | 1:24:00 PM | $9,000.00 |
| 3/6/2014 | Thursday | 12:06:00 PM | $9,000.00 |
| 3/11/2014 | Tuesday | 12:46:00 PM | $9,000.00 |
| 3/14/2014 | Friday | 1:50:00 PM | $9,000.00 |
| 3/21/2014 | Friday | 4:27:00 PM | $9,000.00 |
| 3/25/2014 | Tuesday | 12:38:00 PM | $9,000.00 |
| 3/26/2014 | Wednesday | 12:19:00 PM | $8,000.00 |
| 4/16/2014 | Wednesday | 11:27:00 AM | $9,000.00 |
| 4/22/2014 | Tuesday | 1:09:00 PM | $9,000.00 |
| 4/23/2014 | Wednesday | 2:21:00 PM | $9,000.00 |
| 4/30/2014 | Wednesday | 1:14:00 PM | $9,000.00 |
| 5/1/2014 | Thursday | 1:06:00 PM | $9,000.00 |
| 5/7/2014 | Wednesday | 2:42:00 PM | $9,000.00 |
| 5/8/2014 | Thursday | 12:42:00 PM | $9,000.00 |
| 5/19/2014 | Monday | 1:22:00 PM | $9,000.00 |
| 5/21/2014 | Wednesday | 12:36:00 PM | $9,000.00 |
| 5/22/2014 | Thursday | 11:51:00 AM | $9,000.00 |
| 5/23/2014 | Friday | 11:47:00 AM | $9,000.00 |

As the table of withdrawals shows, Carlton Edwards made 68 cash withdrawals from the bank account over a 234-day period.  The vast majority of the cash withdrawals were for exactly $9,000, and all were for less than $10,000.  The 68 cash withdrawals totaled $603,000.[14]  Records from the Alabama Department of Industrial Relations indicate that for the entire year of 2013 and the first quarter of 2014, Carlton Edwards did not report any income.[15]

---

[14] Doc. no. 1 (Complaint), ¶ 16.

[15] *Id.* ¶ 14.

On August 20, 2014, agents of the Internal Revenue Service, Criminal Investigations ("IRS–CI"), seized the defendant currency from the bank account.[16]

After the government filed its verified complaint for forfeiture *in rem* on January 5, 2015, claimants timely filed a verified claim on February 4, 2015, contesting the forfeiture action in accordance with Supplemental Rule G(5)(a).[17]

## III.  DISCUSSION

The government's complaint is based upon that portion of 31 U.S.C. § 5317 which provides that:

> Any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

31 U.S.C. § 5317(c)(2);  *See also* 18 U.S.C. § 981(a)(1)(A) (providing that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property" is subject to forfeiture to the United States).

The government alleges that the defendant currency was "involved in or traceable to a structuring offense in violation of 31 U.S.C. § 5324," which provides

---

[16] *Id.* ¶ 5.
[17] Doc. no. 6 (Verified Claim).

that:

> No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or recordkeeping requirements imposed by any order issued under section 5326, or the recordkeeping requirements imposed by any regulation prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508—
>
> . . .
>
> (3)    structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

31 U.S.C. § 5324(a);[18] *see also* 31 C.F.R. § 1010.314 (prohibiting the structuring of financial transactions "for the purpose of evading the transactions in currency reporting requirements of this chapter"). The "reporting requirements of section 5313(a)" and its corresponding, implementing regulations require financial institutions to report to the Internal Revenue Service any withdrawals that exceed $10,000. *See* 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311.[19] The crime of structuring currency transactions occurs when an individual "break[s] up a single transaction above the reporting threshold into two or more separate transactions . . . for the purpose of

---

[18] For a detailed history of this statute and the criminal behavior that resulted in its enactment, see Sarah N. Welling, *Smurfs, Money Laundering, and the Federal Criminal Law:  The Crime of Structuring Transactions*, 41 Fla. L. Rev. 287, 288-304 (1989).

[19] The reports financial institutions are required to file are often called "Currency Transaction Reports."  *See*, *e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 148 n.17, 160-61 (1994).

evading a financial institution's reporting requirement." *Ratzlaf v. United States*, 510 U.S. 135, 136 (1994), *superceded by statute on other grounds*, Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103-325.  In greater detail, but in harmony with that definition, United States Department of Treasury regulations state that a person "structures" a transaction *if*

> that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under §§ 1010.311, 1010.313, 1020.315, 1021.311 and 1021.313 of this chapter.  "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. §1010.100(*xx*).

Thus, to prove a criminal violation of § 5324(a), the government must prove "'only that a defendant had knowledge of the reporting requirements and acted to avoid them.'" *United States v. Van Allen*, 524 F.3d 814, 820 (7th Cir. 2008) (quoting *United States v. Cassano*, 372 F.3d 868, 878 (7th Cir. 2004), *vacated and remanded for further consideration on other grounds*, 543 U.S. 1109 (2005) (citing *United States v. Booker*, 543 U.S. 220 (2005)) (in turn, quoting *United States v. Jackson*, 983 F.2d

757, 767 (7th Cir. 1993)), *vacated on other grounds*, 543 U.S. 1109 (2005).[20]

---

[20] *See also United States v. Hovind*, 305 F. App'x 615, 621 (11th Cir. 2008) (upholding a conviction for structuring currency transactions in violation of § 5324 because the "[e]vidence established that [the defendants] structured cash transactions with knowledge of, and the intent to avoid, reporting of those transactions by [their bank].") (citing *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005); *Cassano*, 372 F.3d at 878); *United States v. Vazquez*, 53 F.3d 1216, 1220 (11th Cir. 1995); *MacPherson*, 424 F.3d at 189.

The elements required to establish a criminal violation of § 5324(a) have evolved over time, and, as explained below, older cases may state that a third, willfulness element must be satisfied to establish a criminal violation of § 5324(a). Courts have consistently held that the government must prove that the defendant (1) knew of the reporting requirements, and (2) acted to avoid those requirements. However, as originally enacted by the Money Laundering Control Act of 1986, 18 U.S.C. § 1956 *et seq.*, 31 U.S.C. § 5324 prohibited structuring, but the act of structuring was made *a crime* by another statutory section, § 5322(a). The Tenth Circuit, in *United States v. Dashney*, 937 F.2d 532 (10th Cir. 1991), summarized the statutory provisions at that time as follows:

> Section 5324 states in part that "[n]o person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction . . . structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324. Section 5313(a) of Title 31 requires financial institutions to file reports of currency transactions involving more than $10,000.

> Section 5322(a) of Title 31 provides in part that "[a] person willfully violating this subchapter . . . shall be fined not more than $250,000, or imprisonment [of] not more than five years, or both." Thus § 5322(a) acts to prescribe criminal penalties for a variety of Title 31 violations, including § 5324.

*Dashney*, 937 F.2d at 533 n.1 (bracketed alterations and ellipses in original). Due to the "willfully violating" requirement of § 5322(a), courts were split as to whether a third, willfulness element — *i.e.*, knowledge of the illegality of structuring transactions — was required to establish a criminal violation of § 5324. *Compare United States v. Aversa*, 984 F.3d 493, 502 (1st Cir. 1993) (*en banc*) (holding that knowledge of the illegality of structuring is required to establish a criminal violation of § 5324), *with Dashney*, 937 F.2d at 537-40 (10th Cir. 1991) (holding that knowledge of the illegality of structuring is *not* required to establish a criminal violation of § 5324). *See also Ratzlaf v. United States*, 510 U.S. 135, 136 (1994) (acknowledging the circuit split).

Then, in *Ratzlaf v. United States*, 510 U.S. 135 (1994), the Supreme Court held that to convict a person for structuring currency transactions in violation of 31 U.S.C. §§ 5324(3) and 5322(a), the government must establish that the violation was willful. *Id.* at 149 (" To convict [the defendant] of the [structuring currency transactions] crime with which he was charged, violation of 31 U.S.C. §§ 5322(a) and 5324(3), the jury had to find he knew the structuring in which he engaged was unlawful."). In response, Congress, through the Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103-325, amended § 5324 by adding a criminal penalty

In moving to dismiss the verified complaint, claimants make two arguments. First, they contend that the defendant currency is not forfeitable pursuant to 31 U.S.C. § 5317 because it is not the property involved in the offense of structuring. Second, they contend that the complaint fails to allege sufficient facts to infer the requisite elements of forfeiture.[21]

To prevail at trial, the government must establish that Carlton Edwards violated 31 U.S.C. § 5324(a)(3) because he had knowledge of, and acted to avoid, the statutory and regulatory reporting requirements, and that the subject currency was involved in or traceable to his violation of § 5324(a)(3).  *See* 31 U.S.C. § 5324(a)(3); 31 U.S.C. § 5317(c)(2).

**A.    Whether the complaint states sufficient facts to show that Carlton Edwards had knowledge of, and acted to avoid, the reporting requirements**

Claimants contend that "[t]he government improvidently relies on the volume of withdrawals alone to establish the requisite intent to avoid reporting."[22] Circumstantial evidence, particularly the conduct of the alleged violator, may be used

---

provision, so that reliance on the criminal penalty provision of § 5322(a) was no longer required to convict a person for structuring transactions in violation of § 5324. *See United States v. Vazquez*, 53 F.3d 1216, 1218 n.2 (11th Cir. 1995).  The amended § 5324 does not require that the defendant act "willfully" and, thus, it is no longer necessary to show that a defendant knew that it was illegal to structure currency transactions in order to convict the defendant under § 5324. *See* 31 U.S.C. § 5324; *see also Vazquez*, 53 F.3d at 1218 n.2.

[21] Doc. no. 9 (Motion to Dismiss), at 8-12.

[22] *Id.* at 11.

to establish both that the alleged violator had knowledge of the reporting requirements, and that he acted in a manner designed to avoid the requirements.[23] Even though there is no binding precedent on point in the Eleventh Circuit, a number of other circuit courts of appeal have held that both elements — knowledge of, *and* acting to avoid, the reporting requirements — may be established by evidence of a pattern of withdrawals at or below the $10,000 reporting threshold.[24]  At some point, a jury may find that an innocent person would not suffer the inefficiency of making many small transactions under the reporting threshold, rather than fewer transactions above the reporting threshold, unless that person knew of, and acted to avoid, the reporting requirements.[25]

---

[23] *See Ratzlaf*, 510 U.S. at 149 n.19 ("A jury may, of course, find the requisite knowledge on defendant's part by drawing reasonable inferences from the evidence of defendant's conduct."); *United States v. Richards*, 638 F.2d 765, 768 (5th Cir. 1981) ("The supporting evidence may be direct or circumstantial and we do not discriminate against sufficiently probative evidence because it is indirect.").  In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[24] *See MacPherson*, 424 F.3d at 189-93; *Van Allen*, 524 F.3d at 820; *Cassano*, 372 F.3d at 878-79; *United States v. Wynn*, 61 F.3d 921, 927 (D.C. Cir. 1995); *United States v. Nersesian*, 824 F.2d 1294, 1309-15 (2d Cir. 1987).

[25] *See MacPherson*, 424 F.3d at 191 ("In sum, [the defendant's] willingness to sacrifice efficiency and convenience in depositing a quarter-million dollars through multiple small transactions structured to ensure that no one exceeded $10,000 amply supported a reasonable inference that [the defendant] knew of and was intent on avoiding [the] reporting requirements."); *United States v. Gibbons*, 968 F.2d 639, 645 (8th Cir. 1992) ("Since the receipt and cashing of six checks would have been less efficient and convenient than receiving and cashing one, it is difficult to explain this change except that [the defendants] sought to evade the reporting requirements."); *Nersesian*, 824 F.2d at 1314-15 ("The jury could have inferred from the fact that [the defendant] chose to carry out his [transactions] in a series of small transactions over a number of days, rather than in a single

In *United States v. MacPherson*, 424 F.3d 183 (2d Cir. 2005), for example, the defendant parceled $250,000 into 32 separate deposits over a four-month period, all of which were below $10,000, and 23 of which were in amounts close to the $10,000 reporting threshold ($9,000 to $9,200).  *Id.* at 191.  Additionally, on multiple occasions, the defendant traveled to three different banks on the same day to make deposits of $9,000.  *Id.*  Reviewing the sufficiency of the evidence supporting the jury's guilty verdict, the court concluded that the defendant's "willingness to sacrifice efficiency and convenience in depositing a quarter-million dollars through multiple small transactions structured to ensure that no one [deposit] exceeded $10,000 amply supported a reasonable inference that [the defendant] knew of and was intent on avoiding [the] reporting requirements."  *Id.* (bracketed alterations supplied).

In *United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987), the defendant had been convicted of conspiring to defraud the United States, and, conspiring to cause financial institutions to conceal a material fact by structuring currency transactions to prevent the filing of a currency transaction report. *Id.* at 1309, 1313.[26]  Over a five-day

transaction or several larger transactions, that he knew of the reporting requirements and was attempting to avoid them.").

[26] Specifically, defendant was convicted of conspiring to violate 18 U.S.C. § 371, which makes it a crime to defraud the government by "impairing and obstructing its lawful governmental functions of collecting data and reports of currency transactions in excess of $10,000." *Nersesian*, 824 F.2d at 1313.  Defendant was also convicted of conspiring to cause financial institutions to violate 18 U.S.C. § 1001, which makes it a crime to "knowingly and willfully . . . falsif[y], conceal[], or cover[] up by any trick, scheme, or device a material fact" in "a matter" within the jurisdiction of the United

period, defendant and his co-conspirators converted "in excess of $117,000 in cash into money orders and travelers checks," all in $1,000 denominations. *Id.* at 1309; *see also id.* at 1313.  The defendant argued that the evidence was insufficient to prove that he engaged in the transactions with knowledge of, and with the intent to avoid, the reporting requirements. *Id* at 1310.  As the basis for that argument, the defendant pointed to the fact that the money orders and travelers checks purchased were not for amounts close to the reporting threshold, the lack of evidence that he had ever been informed of the reporting requirements, and other evidence of actions he took that he asserted was inconsistent with knowledge of the reporting requirements. *Id.* at 1314. Ruling on the sufficiency of the evidence in support of the defendant's conviction, the court held that "[t]he jury could have inferred from the fact that [the defendant] chose to carry out his currency exchanges in a series of small transactions over a number of days, rather than in a single transaction or several larger transactions, that he knew of the reporting requirements and was attempting to avoid them." *Nersesian*, 824 F.2d at 1314-15.

Finally, in *United States v. Van Allen*, 524 F.3d 814 (7th Cir. 2008), the defendant operated a used auto-parts business. *Id.* at 817.  Over a two-year period he drafted more than 3,000 checks on his bank account, totaling more than $5.8 million,

---

States government.  18 U.S.C. § 1001.

but each in an amount less than $10,000.  *Id.* at 817-18.  He then cashed the checks at currency exchanges, and paid a processing fee for each transaction.  *Id.* at 817.  He explained the practice as being necessary due to the nature of the used auto-parts business.  *Id.*  He claimed that *his suppliers* conducted business exclusively in cash, so each day he would write checks to cover the anticipated purchase of parts that day.  *Id.*  He also took checks paid by his customers, cashed them at currency exchanges, and then deposited the cash into his bank account.  *Id.*  The defendant asserted that he engaged in this practice because *his customers* transacted business primarily through checks, and he wanted to ensure that the funds deposited into his account would be immediately available, and he also wanted to "'avoid the aggravation' of filing extra paperwork."  *Id.*  Over a two-year period, the defendant and his family "made 1,148 separate cash deposits totaling over $5.5 million into [his] account, and all but three of the deposits were in amounts under $10,000."  *Id.* at 818 (bracketed alteration supplied).  The defendant was charged with twenty-five counts of illegally structuring transactions, with each count alleging "a group of cash deposits totaling over $10,000 with no single deposit exceeding $10,000, all occurring on a single day."  *Id.* at 820.  Reviewing the sufficiency of the evidence in support of the structuring conviction, the court held that "[t]he sheer volume of the transactions almost compels the conclusion reached by the jury."  *Id.*  The court found that "[t]he fact that [the defendant] was

22

willing to sacrifice efficiency and convenience and paying exorbitant transaction fees by going to separate banks in the same day to make almost identical deposits supports the inference that he knew of and intended to avoid the reporting requirements." *Van Allen*, 524 F.3d at 820.

In the present case, Carlton Edwards made 68 withdrawals from the bank account over a 234-day period in amounts typically of $9,000 and totaling $603,000. He never made more than one withdrawal on any given day.

Because Carlton Edwards engaged in so many transactions over that period of time, and none of the transactions exceeded $10,000, a reasonable jury could reasonably infer that he had knowledge of, and that he sought to evade, the statutory reporting requirements.  Moreover, all but two of the 68 withdrawals were for exactly $9,000 — conspicuously close to the $10,000 reporting threshold — and all were for less than $10,000.  A reasonable jury could conclude that it was highly unlikely that an individual would need to make withdrawals in such amounts without ever needing to make a withdrawal in excess of $10,000, and that virtually every withdrawal would need to be for exactly $9,000, unless the individual knew of, and was attempting to evade, the statutory reporting requirements. *See Cassano*, 372 F.3d at 879 ("Finally, it is unlikely, to the point of absurdity, that it was pure coincidence that all fifty-one checks cashed by [the defendant] were in denominations under $10,000.").  Moreover,

Carlton Edwards frequently withdrew cash on consecutive business days.  A jury could find that an individual would not undertake such a burdensome and inefficient policy unless he knew of, and sought to avoid, the reporting requirements.  Thus, the complaint states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof to show that Carlton Edwards had knowledge of, and acted to avoid, the statutory reporting requirements.

**B.     Whether the complaint states sufficient facts to show that the defendant currency was involved in or traceable to a violation of 31 U.S.C. § 5324**

Claimants contend that the defendant currency was not subject to forfeiture because the government fails to allege any scheme or facts supporting a tracing of the seized funds to the transactions at issue.[27]  In other words, the government did not allege revolving deposits of the withdrawn funds, and, thus, according to claimants, any money remaining in the bank account, such as the defendant currency, is separate and distinct from any property involved in the offense of structuring and is not forfeitable under 18 U.S.C. § 981.

The government contends that the defendant currency is forfeitable pursuant to 18 U.S.C. § 984, which provides:

(a)(1) In any forfeiture action *in rem* in which the subject property is cash, monetary instruments in bearer form, funds deposited in an

---

[27] Doc. no. 9 (Motion to Dismiss), at 8-9.

account in a financial institution . . . , or precious metals —

    (A)   it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

    (B)   it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2)   . . . [A]ny identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(b)   No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

18 U.S.C. § 984(a).  In other words, § 984 allows for the civil forfeiture of property, including funds deposited in an account in a financial institution, with a physical and temporal nexus to the tainted property.

Here, the cash withdrawn from the bank account by Edwards was the tainted property because it was involved in a structuring offense.  Thus, the court must determine whether the defendant currency may be substitute property under § 984 because it had a physical and temporal nexus to the tainted, withdrawn cash.

The temporal nexus is met because the structuring violation occurred in October of 2013, and the defendant currency was seized in August of 2014 — less than one year later.  Likewise, the physical nexus is met because the defendant currency was

25

identical property as the cash involved in the structuring offense — both are money — and seized currency was taken out of the same account from which the traceable cash was withdrawn. *See U.S. v. Currency, 300,000 Seized from Bryant Bank Account No. XXX-XX-XXXX*, No. 2:12-CV-2431-AKK, 2013 WL 1498972, *3 (N.D. Ala. Apr. 9, 2013) (where the property involved in or traceable to a structuring offense was originally located in a bank account, the Government can seize the identical amount of funds involved in the offense from the account).

Accordingly, the complaint states sufficiently detailed facts to support a reasonable belief that the government will able to meet its burden of proof at trial to establish that the defendant currency is forfeitable pursuant to § 984.

Additionally, although the government does not make the argument, the defendant currency is also forfeitable because it "facilitated" the structuring offense and was, therefore, "involved in" the allegedly structured withdrawals. 31 U.S.C. § 5317(c)(2) provides that "[a]ny property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, . . ." may be civilly forfeited to the United States. 31 U.S.C. § 5317(c)(2).  A sister provision, 31 U.S.C. § 5317(c)(1), provides for the *criminal* forfeiture of any property "involved in" the offense of structuring currency transactions, or "traceable thereto." 31 U.S.C. § 5317(c)(1).  In

26

*United States v. Seher*, 562 F.3d 1344 (11th Cir. 2009), the Eleventh Circuit, because of the identical "involved in" or "traceable" to language in § 5317(c)(1) and another criminal forfeiture statute, 18 U.S.C. § 982(a)(1), held that both provisions subject the same property to forfeiture. *See Seher*, 562 F.3d at 1369 ("Given that the two statutes essentially mirror each other, it seems incongruous to interpret those provisions as covering different arrays of property.").  Because the statutory provision that applies here, § 5317(c)(2), also contains the same "involved in" or "traceable to" language found in 18 U.S.C. § 982(a)(1), this court finds that § 5317(c)(2) and § 982(a)(1) subject the same property to forfeiture. *See Seher*, 562 F.3d at 1369.

Property eligible for forfeiture under the "involved in" language of § 982(a)(1) and, thus, also subject to forfeiture under the same language of § 5317(c)(2), includes any "'money or other property [that was actually] laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.'" *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003) (quoting *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998)) (bracketed alteration supplied); *see also United States v. $255,427.15 in United States Currency*, 841 F. Supp. 2d. 1343, 1348 (S.D. Ga. 2012) ("The Eleventh Circuit has instructed that § 5317's use of the term 'involved in' permits courts to order forfeiture of property 'involved in, used to commit, or used to facilitate' a violation of § 5324.")

27

(quoting *Seher*, 562 F.3d at 1369).  "'Facilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance.'" *Puche*, 350 F.3d at 1153 (quoting *Bornfield*, 145 F.3d at 1135).

No binding precedent exists in which a court applied the facilitation theory to a currency transaction structuring offense similar to that alleged in this suit.  However, the existing precedent does clarify the broad contours of the facilitation theory of forfeiture.  In *Seher*, the court held that depositing laundered funds into a bank account causes the other funds in that account to become "involved in" the illegal money laundering because they "help disguis[e] the source of those tainted funds." *Seher*, 562 F.3d at 1369.  Similarly, in *Puche*, the court held that when tainted and legitimate funds are intermingled in one account, the legitimate funds may facilitate the illegal money laundering by "acting as a 'cover' and hence reduc[ing] suspicion of the . . . source [of the tainted funds]."  *Puche*, 350 F.3d at 1154 (bracketed alteration supplied).  Also, in *Seher*, the court held that where money was laundered through the purchase of jewelry from two stores, the entire inventory of jewelry at the stores was subject to forfeiture for facilitating the money laundering, because the "inventories made it easier . . . to launder money by giving potential buyers a large variety of jewelry options." *Seher*, 562 F.3d at 1369.

While the decision of the Southern District of Georgia in *United States v.*

28

*$255,427.15 in United States Currency* is not binding precedent, that court confronted

facts similar to those before this court.  The United States sought to forfeit a sum of

currency pursuant to § 5317(c)(2) on the grounds that it was traceable to or involved

in the structuring of withdrawals in violation of § 5324.  *See id.* at 1344-47.  The

claimants moved to dismiss the complaint for failure to state a claim, and specifically

asserted that the complaint failed to show that the defendant currency was "traceable

to or involved in a violation of § 5324."  *Id.* at 1347.  The claimants had made 286

cash withdrawals, all under $10,000, from three business checking accounts.  *Id.* at

1345.  The United States then seized the defendant currency, which consisted of the

funds in those three accounts.  *Id.*  The claimants asserted that, "because the Defendant

Currency seized was not directly deposited into the account by structuring," but rather

the only alleged illegal structuring related to those accounts consisted of withdrawals,

the defendant currency was "not traceable to the structuring violations and not

available for seizure."  *Id.* at 1348.  The United States asserted that the defendant

currency was involved in the structuring violations.  *Id.*  The court found that the

"Complaint sufficiently allege[d] that the Defendant Currency was property *involved*

*in* transactions structured to evade the reporting requirement," because the "structured

withdrawals were made directly from the bank accounts from which the Defendant

Currency was seized."  *Id.* (bracketed alteration supplied, emphasis in original).

This court finds the reasoning of the Southern District of Georgia in *United States v. $255,427.15 in United States Currency* to be persuasive. When withdrawals from an account are illegally structured so as to avoid the reporting requirements, the funds in the account facilitate the illegally structured withdrawals because the illegally structured withdrawals are made possible by the existence of the funds in the account. Without the funds in the account, the illegal structured withdrawals could not be made. Thus, the existence of the funds in the account does more than just make the structuring of withdrawals less difficult, as required to establish that the funds facilitated the structuring. Instead, the funds in the account are a necessary precursor to the structured withdrawals. Additionally, where there exists an ongoing pattern of withdrawals structured to avoid the reporting requirements, the funds in the account are involved in the structuring because, unless seized, they are the next funds in line to be withdrawn through a structured withdrawal. *See United States v. $83,274.51 Seized from BBVA Compass Bank Account Number xxxx9194*, No. 2:13-CV-153-JEO, 2013 WL 5524729, *5 (N.D. Ala. Sept. 30, 2013); *United States v. $438,040.65 in United States Currency*, No. 5:11-CV-984-CLS, doc. no. 12 at 24 (N.D. Ala. Mar. 16, 2012).

Here, the defendant currency was seized from an account from which an alleged pattern of 68 structured withdrawals were made over a 234-day period. Thus, the

complaint states sufficiently detailed facts to support a reasonable belief that the government will able to meet its burden of proof at trial to establish that the defendant currency was "involved in" the allegedly structured withdrawals.

## IV.  CONCLUSION

For the foregoing reasons, this court finds that the complaint satisfies the standard of Supplemental Rule G(2)(f) because it states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  Therefore, claimants' motion to dismiss is due to be, and it hereby is, DENIED.  Claimants are directed to file an answer on or before April 13, 2015.

DONE this 30th day of March, 2015.

_____
United States District Judge

31